Good morning. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning. Welcome to the Ninth Circuit. Before we begin, Judge Schroeder and I want to again thank Judge Lopez for helping us out. It's the first circuit based in Portland, Maine. We really can't do our job well without the help of visiting judges, and we appreciate his helping out today. Thank you so much. It's wonderful to be with you. Appreciate it. The first matter we have on calendar is United States v. Ruiz-Hernandez, and Mr. Pacara, whenever you're ready, and if you want to save some time for rebuttal, please watch the clock. Thank you, Your Honors. Pine Pacara on behalf of Mr. Ruiz. The district judge imposed a sentence 50 percent above the high end of the guideline range, triple what the government was asking for, and a whole year above what probation recommended. This case must be remanded because the judge at sentencing incorporated a material untrue timeline of Mr. Ruiz's law enforcement contact, never explained why the guideline range didn't already take into account Mr. Ruiz's prior conviction, and never addressed or considered Mr. Ruiz's post-conviction rehabilitation. I'll start first with the untrue timeline. The judge relied on an incorrect version of Mr. Ruiz's law enforcement contact. The government agrees is not true. This untrue fact was at the center of the judge's decision because the judge essentially treated Mr. Ruiz as a recidivist illegal reentry offender by saying at 19 in the record that he was deported once, came back, committed a sex offense, and was deported again. But Mr. Ruiz was deported only once in 2019 following his sentence on a sex offense. Although the timeline was ambiguous at sentencing, that fact is clear now on appeal, and that is undisputed. What is in contention, however, is whether the untrue fact had an impact on sentencing, and it did. The judge's concern at sentencing was that Mr. Ruiz was a danger to the United States. Essentially what the judge was saying with the use of the incorrect timeline was that Mr. Ruiz had a history of being deported, coming back, committing a crime, and was going to do the same thing again. Mr. Puckahart, could I interrupt you for just a moment? You've asked to take judicial notice of immigration record. Is that for the purpose of is clear now that Mr. Ruiz was deported only once. And that was not for the district court, or not in the record of probation, or in the pre-sentence report, or anything? So, Your Honor, it was ambiguous at sentencing because there was parts of the record that stated that Mr. Ruiz was only deported once. For example, the rap sheet connected to the complaint that the it states that he had an order of removal in 2014, physically removed in 2019. The timeline that I presented in my sentencing memo suggested that Mr. Ruiz was only deported once. The PSR is where the ambiguity begins, and that's what the judge ended up relying on. Certainly, I should have done a better job of clearing the record in the district court, but it is clear now, and it is undisputed. We also know that it wasn't just about the seriousness of the conviction in 2015 that the judge had on its mind when imposing such a sentence. The timeline was important. When the judge began talking about the aggravating factors, the judge talks about, quote, the timeline, and this is at 19, where he talks about Mr. Ruiz's law enforcement contact, names Mr. Ruiz a danger to the community, and then sentences him triple to what the government was asking for, a 36-month sentence for a first-time illegal reentry offense. Now, if I can interrupt here, do you know when he received a notice of appearance or notice of intent to remove? I know he committed the DUI, and then later, maybe a year or two afterwards, the second offense. Do you know when he received the notice? Yes, Your Honor, so it's my recollection that Mr. Ruiz was incarcerated for the DUI when he received the notice, but it didn't have the date or the time for where he needed to be for the IJ removal. The removal proceedings then happened in 2014, and then he was ordered removed in absentia and then deported physically after his 2015 sex offense sentence. To make matters worse, the judge Counsel, excuse me. To reach the conclusion that your client is a danger to the community, why isn't it enough for the judge to understand that when he was in the country illegally, he committed in fairly rapid succession these two offenses, one of which involved danger to the community generally, the DUI, and the other, the sexual assault. I mean, that would seem enough apart from any confusion about the timeline to support his conclusion that he was a danger to the community. Yes, Your Honor, so had the judge only been concerned with the convictions, he would have stopped after he spoke about the convictions. He talked about the convictions in detail. He then talked about Mr. Ruiz's motivation for returning and then the impact custody had on his family, and then immediately turned to the timeline of events. Certainly, the judge had on its mind the timeline of law enforcement contacts that Mr. Ruiz had, and then immediately after talking about that, he named Mr. Ruiz a danger and sentenced him right after that. To make matters worse, Your Honor, the judge imposed a sentence a whole year above Mr. Ruiz's guideline range without justifying the upward variance. As Your Honor mentioned, the judge's focus at sentencing was Mr. Ruiz's criminal history. Both of his criminal convictions still scored, and the 2015 conviction alone enhanced his sentence by 125%. If we were to remand and vacate the sentence and remand for if he gets fined, could he not? Yes, Your Honor, the judge could impose the same sentence. We don't have to prove that it is a certainty for the judge to impose a different sentence. All we have to show is that there's a reasonable probability that the sentence would be different, and I think this court's Hernandez Mesa is important to consider because there this court observed that where a judge has to show their work, where they have to give further explanation, the judge can at least confirm that the ruling is correct. If he's unable to articulate a plausible rationale for his ruling, he may think better of it. Here, had the court taken into consideration the big impact the guidelines already had based on Mr. Ruiz's past, the 10-point swing in his offense level, the judge may have thought twice about such a big deviation from the guidelines. So, it seems, what concerns me, it seems to me you may be conflating, and this is a plain error situation, you might be conflating the error and the prejudice issues in the sense that you seem to be saying, well, if the judge had said more, he would have realized that perhaps he should impose a different sentence. I have a little trouble understanding how you get from these particular errors relating to a failure to explain to the showing that there is a reasonable probability that he would have imposed a different sentence. If he had not made these failure to explain errors, how do you get from one to the other? Thank you, Your Honor. So, it is a rule that where there is a major variance, where there is a major degree of difference from the guidelines, there needs to be sufficiently on-par explanation to explain the degree of the variance, and that's in Gall, in Rita, and in Cardi. Here, the judge, had he taken the time to explain the degree of the variance that he was incorporating beyond that which the guidelines was already incorporating because of Mr. Ruiz's past, then he would have thought twice about incorporating an additional four-level enhancement on top of the 10-level enhancement he was already receiving. The near three-year swing guidelines that he was already receiving from his past. I'll turn quickly to the last point I wanted to make, Your Honors. At sentencing, the judge simply ignored Mr. Ruiz's mitigation arguments that went directly to the court's concerns. We presented undisputed post-offense rehabilitation that went to the judge's concerns of Mr. Ruiz's dangerousness. I see that my time is running out. I'll save the rest of the one minute that I have for rebuttal unless there's any other questions. Thank you, Mr. Hawley. May it please the court, Benjamin Hawley for the United States. Picking up on that last point, the district court was clear about what it found aggravating and what mitigating facts were. This court requires that not that a district court walk through every point and go point by point. It's not a debate competition where if you miss one thing that becomes the winning argument. Instead, we just need to be sure that the district court has heard all of the arguments, has a reasoned basis for its decision making, and that it makes enough of a record for this court to then review to determine reasonableness, procedural and substantive reasonableness. And the district court here did that. It made very clear. It read all of the papers, the pre-sentence report, defendant's sentencing memorandum, etc. Knew the party's positions, knew the guidelines calculations, knew how the parties calculated the guidelines along with probation, and then explained what it found aggravating, particularly the criminal history, of course, and specifically the need to protect the public from Mr. Ruiz given his dangerous and violent crimes and the need to deter him because of that same reason. It also mentioned the mitigating factors that it found, the effect on his family, his professed reason for coming back to the United States, and then the court imposed the sentence. That is sufficient. There's enough there for this court to know what the district court was thinking, how it was considering the various facts. Yes, but the court had the timeline wrong, and the court expressly said that it was looking at the timeline to explain his sentence. So it would appear that there was a mistake and that it only been one removal and that he hadn't returned to commit another crime. Isn't that right? That's correct, but two responses or two reasons that that doesn't then lead to remand here. The first is that, again, when the court wanted or said something was aggravating, found it aggravating, it said so. So the court talked about the aggravating facts of the criminal history. It certainly mentioned the timeline and agreed that got it somewhat wrong, but there was nowhere where the court said the timeline is important or the fact that he returned after removal was important. There's basically no reason to think from this record that had this been pointed out to the court that the court would immediately say, oh, I'm sorry, that changes things. Instead, he was just walking through the timeline to kind of hit what those criminal history convictions were, that it wasn't the order of the events that seemed to matter to the district court. And second, even if this court disagrees with me on that and finds that it was at least ambiguous, that's still not enough to remand because, again, we're on plain error review as Mr. Reeds has conceded. So to the extent there's ambiguity or uncertainty about how the district court would have treated that, then that means that it should be affirmed because any error is necessarily not plain when the facts are ambiguous to that degree and there's not a reasonable probability of a different result. That is that if the court knew this fact, that it would have changed the outcome. For a similar reason, the extended counsel, excuse me, it isn't opposing counsel quite right that under Ninth Circuit precedents, you have a situation here where the sentence departs substantially, varies substantially from the guidelines. It's above what the government recommended significantly. It's above what probation recommended significantly. But under that to the extent there is such a particular burden of justification, it didn't approach that here. I mean, this is a very summary explanation. It never addresses the mitigation argument at all other than to say that I've heard it, but he doesn't explain it. So I don't know how you can say that what the judge did here is in any way consistent with the Ninth Circuit precedents in this particular scenario. So I think my response then would be that the court doesn't need to parse out what goes to the guidelines and then what justifies an extra variance. Rather, we look to the sentencing as a whole to determine is there a reason for the sentence that was imposed. And here we know the court knew the guidelines, knew the party's position, so knew when it was imposing that sentence. This is going up above the guidelines, above probation, above the government, and obviously above the defense. So there wasn't any confusion or uncertainty that the judge knew this was an upward variance. So then the question becomes, did the court sufficiently explain that upward variance? And here, given the violent nature of the criminal history and the dangerous nature of the DUI was twice the legal limit, that's the rationale that the court was giving, that this is uniquely a dangerous defendant. This isn't merely someone who has committed a few crimes and then come back to the United States or vice versa. Rather, that this is someone who is uniquely dangerous to the public, so we need to protect the public, and he specifically needs to be deterred. And so it was that rationale that mattered to the court. And again, ultimately, the argument here, as I understand it from the defense, is that the court would have talked itself into a lower sentence if it further explained itself. And there's no basis in the record for that conclusion. The court was very clear about the factors. It weighed them more heavily, certainly, than the parties had in terms of how aggravating they were. But the fact that they were aggravating was not necessarily in dispute, and the court, it's within the district court's wide discretion to determine how much weight to give that. Here, it gave it a significant weight. I'm happy to address any of the other points, but ultimately... But he never explained why he was rejecting the government's variance. That's kind of an during the sentencing hearing. At the end, the government said, just to make sure the court... Has the court considered that? The court said, yes, it had, and rejected it. So certainly, the court could have explained more. But again, there's no reason to believe that, had it done so, that it would have suddenly changed its mind about the effect of a essentially two-level variance. The court already knew, and it already granted a fast-track departure, acceptance of responsibility. All of that was kind of tied in together. So again, we're not arguing that the court shouldn't have said more, or couldn't have said more, but rather, the court did not need to. And on plain error review, that even if it had done so, there's no reason to think the sentence would have been any different. I'm still not sure how you can distinguish the Torello case, where in that case, the judge did cite the reasons why, reasons for the sentencing, the huge amount of drugs, the role the defendant played in. But our court said, that's not enough, even though those are very compelling reasons for the sentence, that you still need to address the mitigating non-frivolous reasons offered by the defendant when you go above the guideline range. So I'm not sure how you can still distinguish that case, and we're bound by that. Correct. But in Trujillo, at least as I recall the facts, the court said nothing, kind of one way or the other. In fact, I believe it was simply just a docket entry, imposing sentence, and there was no explanation one way or the other. It was completely devoid of content. Whereas here, there is content. The court is explaining what it finds aggravating. And in Trujillo itself, this court said, we don't require the point-by-point rebuttal, as it were, from the court. Rather, we just need to be sure that the court heard everything, has a reason to base this forced decision-making, and again, there's enough of a record for this In that case, it was plain error on the explanation because the judge said, I find the defendant's inability to pay restitution to be an aggravating fact. Just made that quick kind of comment and then moved on. That, of course, is error to consider that an aggravating fact. But the difference there is that the court expressly called it aggravating, so this court wasn't sure how much of a role it played in the sentence. Here, we know what the court found aggravating. We know that that timeline did not, the court did not call that aggravating, just kind of, again, mentioned it in passing. So when this court found that there's insufficient explanation, it's significantly less explanation than what we have here, where the court is setting out its reasons and explaining what it finds aggravating. Even though part of that explanation was, turns out, wrong. Yes, though, again, our position is that the part that was wrong had no effect on the sentence. It was essentially in passing. Understood. And I guess the concern would also be, to the extent there is a holding that an unobjected to incorrect fact automatically comes back for resentencing, then, of course, that's going to encourage district courts to say even less. Now, if this court finds that it was important to the sentence, it was material, and the sentence probably would have been different, then, of course, remand is appropriate. But to the extent that it didn't affect the sentence, or the judge wouldn't have changed the sentence had it got the two things switched back around, then, because we're on plain error review, this court should affirm. And so what about the handling of the three-year period of supervised release in the face of an explicit statement of the guidelines that somebody is going to be deported? You don't impose conditions of supervised release unless there's a particular reason to do so. It can be done, but you have to justify doing so. The judge didn't say a word about why he was doing it. Yes, we can infer why he did it, but in the face of a guideline statement that you shouldn't do it unless you justify it, which seems pretty hard to overlook, that is another error. Certainly. So two responses. The first is the reason the guidelines provide is deterrence, and that was a primary motivating factor of the court's sentence here. It talked about deterrence repeatedly. And second is this court, albeit in an unpublished decision and consistent with other sites or reference that guideline. So to the extent that was there, it was not plain because it was not obvious under current law. And I see I'm out of time. Thank you, Your Honors. Your Honors, I'll just point to one issue. As Judge Lipp has discussed, the Ninth Circuit is clear that a judge must provide explanation, not merely consideration. And that's clear in Trujillo and that's clear in Emmett. I'm not advocating that a judge needs to do a point-by-point analysis of every argument that we present. But when our arguments go to post-defense rehabilitation, the judge should do more than just completely ignore them. This is particularly important for post-defense rehabilitation in light of the Supreme Court's pepper, counseling courts to look at the up-to-date person when sentencing someone. Here, Mr. Ruiz at sentencing in 2021 in May is a different person than he was eight years ago in 2013 and seven years ago in 2014. The judge found Mr. Ruiz was a danger because of his DUI and his sex offense in 2015. But we presented undisputed facts that he had remained sober since 2014. He had joined the church. He had completed all programming, put a roof over the heads of his parents and financially supported his brother. We don't know what effect that post-defense rehabilitation had on the judge's decision because he never mentioned it once. And your honors, with that, we ask for remand. Thank you. Thank you both for the excellent advocacy. The case has been permitted.
judges: SCHROEDER, Lipez, LEE